Statement of the Case.
MONROE, C. J.
Defendant prosecutes this appeal from a judgment condemning it to pay a license tax to the city of Shreveport for the business therein conducted by it during the year 1916. It admits that it is a foreign corporation; that it was engaged during the year mentioned in selling, in Shreveport, at wholesale and retail, the various products of crude and refined oil; and the amount of the tax for which it is liable, if liable at all, is no longer in dispute — the sole question brought up for decision being raised by its denial of the authority of the city of Shreveport to impose any license tax upon it, and its allegation that it is liable for no other such tax than that imposed by and on behalf of the state, under Act 127 of 1898, as amended by Act 276 of 1908.
Opinion.
The legislative charter of the city of Shreveport (being Act 158 of 1898), by paragraph “ninth,” § 11, p. 304, confers upon that corporation the power to “impose an annual license tax upon trades, professions and callings,” and the same language has been used in the re-enactments of that paragraph in Acts 201 of 1902, p. 390; 203 of 1908, p. 423 (where it becomes paragraph 28), and 220 of 1912, p. 505 (where it retains the number last mentioned). Articles 224, 225, and 229 of the Constitution (of 1898) read:
“Art. 224. The taxing power may be exercised by the General Assembly for state purposes and by parishes and municipal corporations and public boards, under authority granted to them by the General Assembly, for parish, municipal, and local purposes, strictly public in their nature.
“Art. 225 [quoting in part]. Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax. * * * ”
“Art. 229 [quoting in part]. The General Assembly may levy a license tax. * * * All persons * * * and corporations pursuing any trade, profession, business or calling, may be rendered liable to such tax, except clerks, laborers, clergymen, school-teachers, those engaged in mechanical, agricultural, horticultural, and mining pursuits, and manufacturers other than those of distilled, alcoholic or malt liquors, tobacco, cigars, and cotton seed oil. No political corporation shall impose a greater license tax than is imposed by the General Assembly for state purposes. This restriction shall not apply to dealers in distilled, alcoholic or malt liquors.”
The framers of the Constitution then thought proper to make special provision with regard to the license and other taxation of foreign corporations doing business in this state, which it did as follows:
“Art. 242. Corporations, companies, or associations organized or domiciled out of the state, but doing business therein, may be licensed and taxed by a mode different from that provided for home corporations or companies: Provided, said different mode of license shall be uniform, upon a graduated system, and said different mode of taxation shall be equal and uniform as to all such corporations, companies or associations that transact the same kind of business.”
Immediately after the adoption of the Constitution, the General Assembly passed Acts 127, 158, and 171 of 1898. Act 127 is entitled:
“An act to levy an annual license tax upon certain classes of corporations * * * under article 242 of the Constitution.”
Act 158 is the charter of the city of Shreveport, which, as we have stated, confers upon that city the power to “impose an annual license tax upon trades, professions and callings.” And Act 171 is entitled:
“An act to levy, collect and enforce payment of an annual license tax upon all persons *375 * * * and corporations, pursuing any trade, profession, vocation, calling or business, except those who are expressly excepted from such fícense tax by article 229. * * * ”
Act 127 contains no provision authorizing the imposition of municipal licenses, and, if there are any municipal corporations in the state upon which that power has not been otherwise conferred, it might very well be argued that they do not possess it. Act 136 of 1898 (being “An act for the creation and government of municipal corporations throughout the state,” etc.), however, confers that power upon all corporations to be created under its authority and having more than 2,000 inhabitants, in the following terms, to wit:
“To levy and collect a license tax upon and regulate all callings, trades, professions and occupations, conducted, pursued, carried on, or operated within the limits of the city or town,” etc.
It has been held by this court that the grant so made authorizes a corporation such as is thus designated to impose a license tax upon a foreign corporation, carrying on a business, within its limits. Hunter v. Wells Fargo Express Co., 134 La. 358, 64 South. 139. And what has thus been held with regard to a corporation deriving its authority from a general statute may be held with equal, or greater, confidence with regard to a corporation upon which such authority has been conferred by express grant in its legislative charter, and the more particularly where, as in this case, the grant has been thrice renewed, by different statutes, enacted since the Acts of 1898 became laws. Apart from that decision, it is entirely clear to us that, under the original grant, as contained in its charter, the city of Shreveport was authorized to impose a license tax upon any corporation, whether foreign or domestic, doing business within its limit's (subject to the exceptions and condition contained in article 229 of the Constitution), and that a grant to that effect, to municipal corporations in general, in Act 127 of 1898, would have been, as to that city (as such grant in Act 171 of 1898 was, and is), a work of supererogation.
The judgment appealed from is therefore affirmed.